# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF INDIANA
### FORT WAYNE DIVISION

| | | |
|---|---|---|
| **LISA C. STURGILL,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **CAUSE NO. 1:17-cv-00500-SLC** |
| | ) | |
| **SCHNEIDER ELECTRIC,** | ) | |
| | ) | |
| **Defendant.** | ) | |

## OPINION AND ORDER

Plaintiff Lisa C. Sturgill filed this case against her former employer, Schneider Electric ("Schneider"), in Huntington Circuit Court on November 9, 2017, alleging that Schneider retaliated against her in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e *et seq*. ("Title VII"). (DE 5). Schneider removed the case here under 28 U.S.C. § 1331 on December 7, 2017.[1] (DE 1).

Now before the Court is Schneider's motion for summary judgment (DE 31), together with a supporting memorandum and evidence (DE 32), filed on January 22, 2019. Sturgill filed a response brief in opposition to the motion on March 5, 2019, and Schneider timely filed a reply brief on March 19, 2019. (DE 36; DE 37). Therefore, the motion for summary judgment is ripe for ruling. For the following reasons, the Court will GRANT Schneider's motion for summary judgment.[2]

---

[1] Subject matter jurisdiction under 28 U.S.C. § 1331 is proper in this Court. Jurisdiction of the undersigned Magistrate Judge is based on 28 U.S.C. § 636(c), all parties consenting. (DE 22; DE 30).

[2] In her complaint, Sturgill also advanced claims of sexual harassment and failure to train based on her sex. (DE 1). On December 22, 2017, Schneider filed a motion to dismiss all of Sturgill's claims, asserting that Sturgill failed to allege facts to show that she exhausted her administrative remedies before filing suit, and that any claims based on events prior to her July 2016 discharge were untimely and outside the scope of the Charge of

# I. FACTUAL AND PROCEDURAL BACKGROUND[3]

Schneider, a company based near Boston, Massachusetts, is engaged in the manufacture of power distribution transformers. (DE 32-2 at 223). Schneider operates numerous facilities across the country, including a plant in Huntington, Indiana. (DE 32-2 at 223).

Sturgill was hired by Schneider on January 9, 2012, to work at its Huntington, Indiana, plant and remained employed there until her termination on July 26, 2016. (DE 32-2 at 10, 223). Throughout her employment, Sturgill worked as an hourly-paid production worker and was represented by the International Association of Machinists and Aerospace Workers, Local Lodge 2574 (the "Union"). (DE 32-2 at 33, 223). The terms and conditions of Sturgill's employment were governed by the collective bargaining agreement ("CBA") between the Union and Schneider. (DE 32-2 at 10, 84-126).

## A. Sturgill's Work as a "Winder" From January 2012 to November 2015

From her date of hire until late November 2015, Sturgill worked as a "winder," which

---

Discrimination that she filed with the Equal Employment Opportunity Commission (EEOC) on January 27, 2017. (DE 11; DE 12). Sturgill did not file a response to the motion to dismiss. In an Order dated March 12, 2018, the Court denied the motion to dismiss, but clarified that "the Court reads the Complaint as one that asserts a retaliation claim based on the filing of an EEOC charge in 2016," and that Sturgill "may be entitled to rely on time-barred events as evidence that the decision to terminate her employment was unlawful retaliation." (DE 17 at 5-6).

In its motion for summary judgment, Schneider included argument on Sturgill's claims of sexual harassment and failure to train based on her sex; Sturgill did not respond to these arguments in her response brief. (DE 36). As such, Sturgill has abandoned her claims of sexual harassment and failure to train based on her sex. *See Palmer v. Marion Cty.*, 327 F.3d 588, 597 (7th Cir. 2003) (stating that the plaintiff's negligence claim was "deemed abandoned" where the plaintiff failed to delineate the claim in his response brief in opposition to summary judgment (citations omitted)); *Laborer's Int'l Union of N. Am. v. Caruso*, 197 F.3d 1195, 1197 (7th Cir. 1999) (stating that arguments not raised in response to a motion for summary judgment are deemed waived).

[3] For summary judgment purposes, the facts are recited in the light most favorable to Sturgill, the nonmoving party. *Payne v. Pauley*, 337 F.3d 767, 770 (7th Cir. 2003). Having said that, Sturgill did not submit a statement of material facts as required by Local Rule 56-1(b)(2). Nor did she submit any evidence with her response brief; instead, she simply cites to the evidence—primarily her own deposition testimony—submitted by Schneider with its summary judgment motion. (*See* DE 36).

entailed winding the metal coils that go inside the transformers. (DE 32-2 at 12, 21). When newly hired, Sturgill successfully completed a 90-day probationary period and qualified for the position on April 9, 2012. (DE 32-2 at 12-13). The training was primarily done by experienced peers who worked in the same department, which was customary at the Huntington facility. (DE 32-2 at 12). Sturgill took notes as she was trained and kept the notepad at her workstation for future reference. (DE 32-2 at 13). After qualifying as a winder, Sturgill moved from the first shift to the second, where Tim Gerhart was her supervisor. (DE 32-2 at 17, 252). Sturgill, like all other hourly employees, continued to receive regular training on various aspects of her job functions. (DE 32-2 at 14).

At the Huntington facility, two mechanisms are used to encourage employees to improve their performance: informal counseling discussions, which are memorialized as "documented discussions"; and formal "corrective actions." (DE 32-2 at 16, 19, 224, 253, 256). Documented discussions are written summaries of one-on-one discussions between managers and employees on issues such as performance or conduct, and are typically used to correct issues before they reach the level of severity where corrective action is warranted. (DE 32-2 at 19, 224, 253, 256). Corrective actions typically follow five steps of progressive discipline as outlined in the CBA, which are: (1) verbal warning, (2) written warning, (3) written reprimand, (4) suspension, and (5) termination. (DE 32-2 at 16, 84-126, 224). Under the terms of the CBA, corrective actions expire and are removed from an employee's record if the employee completes six months without incurring another corrective action step. (DE 32-2 at 20, 84-126, 224).

During her employment, Sturgill received 36 documented discussions, the highest

number of any Schneider employee with fewer than 10 years of service.[4]  (DE 32-2 at 224).

Sturgill was not aware of all of these documented discussions.  (DE 32-2 at 19-20).

During her time as a winder, Sturgill received six corrective actions, several due to poor work quality.  (DE 32-2 at 16, 136-47, 224, 253).  However, three of the six corrective actions—those occurring in 2012 and 2013—were subsequently removed from her record in accordance with the terms of the CBA when they later expired.  (DE 32-2 at 16, 136-47, 224).

The remaining three corrective actions occurred in 2015—specifically, on June 12, 2015 (a verbal warning for failing to following the winding print); July 13, 2015 (a written warning for failing to follow the winding print); and November 16, 2015 (a "re-issued" written warning for failing to follow the winding print).  (DE 32-2 at 16, 148-61, 224, 253).  Sturgill grieved each of the 2015 corrective actions, triggering an investigation by the Union and Schneider.  (DE 32-2 at 17-18, 224).  In each case, the Union elected not to arbitrate the grievance.  (DE 32-2 at 224).

### B.  Sturgill's Work as a "Vent Cell Operator" From November 2015 to July 2016

On September 9, 2015, Schneider posted an opening for a ventilated transformer cell operator ("vent cell operator") at the Huntington plant.  (DE 32-2 at 21, 163).  Sturgill bid for the position, and because she had more seniority than any other employee who bid, she was awarded the position.  (DE 32-2 at 21, 224).  Sturgill moved into the vent cell operator position in late November 2015 and was assigned to the second shift.  (DE 32-2 at 21, 224, 253, 257, 267).

Because no second-shift employee was available to train her, Sturgill had to move to the first

---

[4] In her response brief, Sturgill "disputes that she has the highest number of documented discussions of any employee with Schneider."  (DE 36 at 2-3).  She does not, however, submit any evidence to actually create a material factual dispute on this point, and consequently, the Court accepts Schneider's statement as true for purposes of this motion.  *See Randall v. Rolls-Royce Corp.*, 742 F. Supp. 2d 974, 993 (S.D. Ind. 2010) ("[T]he nonmoving party bears the responsibility of identifying the evidence upon which [s]he relies to defeat the motion." (citing *Harney v. Speedway SuperAmerica, LLC*, 526 F.3d 1099, 1104 (7th Cir. 2018))).

shift for her 90-day qualifying period; during this time, she was trained primarily by Justin Cole, a coworker. (DE 32-2 at 21, 224, 253). By this time, Gerhart had also moved to the first shift, so he continued to supervise Sturgill. (DE 32-2 at 21, 252).

According to Sturgill, about six to eight weeks into her qualification period some of her male coworkers in the vent cell department—specifically, Cole, Brian Buck, Charles Curry, and Tom Haupert, whom Sturgill referred to as "the boys club"—began ignoring her questions and refusing to train her. (DE 32-2 at 22, 25, 226). Sturgill told Gerhart on about 12 different occasions that she was not getting the training she needed; each time Gerhart would assign an employee to assist her, and the designated employee complied. (DE 32-2 at 89-90, 253). This continued throughout Sturgill's qualification period, and she eventually qualified for the vent cell operator position on February 21, 2016. (DE 32-2 at 25, 165, 225, 253, 257).

### C. Sturgill's Internal Complaints and Schneider's Investigation

Five days later, on Friday, February 26, 2016, Sturgill met with Christine Troxell, Schneider's Human Resource Business Partner, to make an internal complaint. (DE 32-2 at 32-34, 223, 225). She complained that a coworker, Neal Butcher, told her that he heard another coworker, Haupert, call her a "cunt" on one occasion. (DE 32-2 at 32-34, 167, 225, 230). She also complained that she had not received adequate training by her male coworkers in the vent cell department during her qualification period due to her gender, and that these male coworkers had also not properly trained other females. (DE 32-2 at 225, 230). Sturgill provided Troxell with the names of these females and several coworkers with whom Troxell should speak during her investigation. (DE 32-2 at 33, 225).

Troxell began her investigation on Monday, February 29, 2016, and interviewed 27

employees individually that week, including all of the hourly employees in the vent cell department and any female employee who formerly worked in the vent cell department. (DE 32-2 at 33-34, 167, 225). After reviewing all of the employees' responses, Troxell concluded that Sturgill's complaints could not be substantiated, and to some extent were refuted. (DE 32-2 at 226). On or about March 7, 2016, Troxell briefed Tony Robertson, Manufacturing Manager, who was Gerhart's supervisor during the relevant period, and Jim Harden, Plant Manager, on her findings, recommending that Haupert should nevertheless be given a refresher training on Schneider's anti-harassment policy. (DE 32-2 at 226, 252, 256-57, 266). Harden and Robertson agreed with Troxell's conclusions, and Haupert underwent the refresher training on March 8, 2016. (DE 32-2 at 226, 257, 266).

On March 9, 2016, Troxell met with Sturgill, Robertson, and Tim Riemke, a Union representative, to discuss the results of the investigation. (DE 32-2 at 34-35, 169, 226, 232). Troxell and Robertson claim that after Troxell informed Sturgill that she determined no harassment had occurred, Sturgill became angry, yelled and using profanity, and that at several points during the meeting, Robertson said "Lisa, language," in an attempt to get her to stop cursing. (DE 32-2 at 226, 234, 257). Sturgill, however, denies that she used "the F word" during the meeting. (DE 32-2 at 36). She testified, rather, that during the meeting Robertson became "aggressive" toward her, acted in a "threatening manner," and tried to "intimidate" her. (DE 32-2 at 35). She stated that he told her to "shut up about what was going on out in the floor about this investigation" because it was hurting production, and that "he was going to reprimand [her] if he heard of anything else." (DE 32-2 at 35). At the end of the meeting, Sturgill asked Troxell to provide the outcome of the investigation in writing. (DE 32-2 at 34-35, 226, 257).

Sturgill filed a grievance with the Union regarding the outcome of the investigation.  (DE 32-2 at 226, 257).

The next day, March 10, 2016, Robertson; Joe Kellogg, the Union chief steward; and Claudia Estrada, Schneider's Quality Manager, met with Sturgill and provided her the written outcome of Troxell's investigation that Sturgill had requested.  (DE 32-2 at 36, 171-75, 177, 257).  Robertson asked Sturgill to refrain from discussing her complaint or the investigation with her coworkers on the production floor during work hours because it was disrupting production; Sturgill responded that she would "talk to who [she] wanted."  (DE 32-2 at 35-37, 257, 264).  Robertson also told Sturgill that he had received complaints from her coworkers that she was writing comments about them in her notebook.  (DE 32-2 at 36, 258, 262, 264).  During this meeting, Sturgill repeatedly interrupted Robertson, and Robertson eventually told Sturgill to be quiet and listen.  (DE 32-2 at 36, 258, 264).  Again, Sturgill felt that Robertson acted aggressively and in a threatening manner toward her during the meeting.  (DE 32-2 at 35-36, 39).

Eleven days later, on March 21, 2016, Gerhart issued Sturgill a written reprimand for wearing improper brazing glasses, which was considered a serious safety violation.  (DE 32-2 at 182, 253-54, 258).  Sturgill, however, had been wearing these same brazing glasses for the past two years.  (DE 32-2 at 27, 179, 258).  During Schneider's investigation into the incident and prior to the corrective action being issued, Sturgill claimed that she had obtained the glasses from a coworker, then later stated that she had obtained them from Fastenal (one of Schneider's suppliers of personal protective equipment), but then later admitted that both statements were untrue.  (DE 32-2 at 26-27, 182, 254, 258).  She then claimed that "the safety guy" two years earlier had approved the glasses.  (DE 32-2 at 26, 179, 258).

On March 31, 2016, Sturgill met with Harden and complained that Robertson had harassed and retaliated against her by being "aggressive" and "threatening" toward her during their March 10, 2016, meeting and by disciplining her on March 21, 2016, for wearing improper brazing glasses. (DE 32-2 at 39, 179, 227, 266-67). Sturgill asked that she have no further contact with Robertson, and that Riemke act as her Union representative if she was called in for discipline. (DE 32-2 at 39, 41, 179, 227, 266-67). Harden responded that all contact between Sturgill and Robertson could not be eliminated because he was her second-level supervisor, but Harden agreed that Schneider would wait for Riemke before presenting any discipline, except in the event of an emergency. (DE 32-2 at 39, 41, 179, 227, 266-67).

*D.  Sturgill Files Her First Charge of Discrimination With the EEOC*

On April 28, 2016, Sturgill filed her first Charge of Discrimination with the EEOC, alleging that: (1) she was subject to harassment based on her sex when Haupert allegedly called her a "cunt"; (2) Schneider failed to properly train her in the vent cell department because of her sex; and (3) she was retaliated against by Robertson after Schneider's investigation into her internal complaint. (DE 32-2 at 42, 81).

Two months later, on June 29, 2016, Sturgill received a "suspension," the fourth step in the progressive disciplinary process specified in the CBA, for switching the shipping labels on two transformers. (DE 32-2 at 26-27, 184, 227, 254, 258). Even though this step is called a suspension, Sturgill was not required to take any time off from work and her pay was not impacted. (DE 32-2 at 29, 227). Sturgill denies switching the labels and asserts that another employee, "Lyle," likely did so. (DE 32-2 at 27-28).

Schneider contends that the next day, June 30, 2016, Sturgill improperly welded tie bars

on the same side of a transformer despite being coached on May 3, 2016, for making this same

error.  (DE 32-2 at 31, 195, 254, 267).  Sturgill denies that she made this error and denies that

she received the earlier coaching.  (DE 32-2 at 29-31).  At her deposition, Sturgill was

confronted with pictures of the alleged defective transformer, which contained a sticker with her

"clock number" on it.  (DE 32-2 at 30).  Sturgill responded that "you can get those stickers

anywhere" and that "[a]nyone could have put a sticker on that coil with this."  (DE 32-2 at 30).

Because this alleged mistake constituted Sturgill's "sixth disciplinary event," Sturgill

faced discharge, the final step in the progressive discipline process.  (DE 32-2 at 30, 227, 254,

258).  Prior to making the termination decision, Schneider provided Sturgill an opportunity to

meet with management and respond to each of her corrective actions and documented

discussions.  (DE 32-2 at 30-31, 227, 267).  This meeting was held on July 19, 2016, with the

following persons in attendance:  Sturgill; Troxell; Riemke; Lisa Guhl, Senior Coordinator of

Operations; Lyle Smith, Materials Supervisor; and Tony Wickersham, National Union

representative.  (DE 32-2 at 30, 227, 267).

### E.  Sturgill's Termination

Following the July 19, 2016, meeting, Harden and Troxell reviewed Sturgill's

contentions about her documented discussions and corrective actions, together with Schneider's

documentation related to each incident.  (DE 32-2 at 227, 267).  Harden and Troxell determined

that all of the actions taken by Schneider were legitimate, and that Sturgill had been treated more

leniently than others because her disciplinary progression had taken six steps, rather than the five

steps set forth in the CBA.  (DE 32-2 at 227, 267).  Accordingly, they recommended to Lori

Swiatek, Director of Human Resources, and Randy Smith, Director of Labor Relations, that

Sturgill be terminated. (DE 32-2 at 227, 267). Swiatek and Smith approved the decision, and Sturgill was terminated on July 26, 2016. (DE 32-2 at 30, 227, 267).

### F. Sturgill Files Her Second Charge of Discrimination With the EEOC

On August 16, 2016, the EEOC dismissed Sturgill's first Charge of Discrimination filed on April 28, 2016, and issued her a Dismissal and Notice of Rights. (DE 32-2 at 42, 199). Sturgill did not file suit within 90 days of her receipt of this Notice. (*See* DE 1).

On January 27, 2017, Sturgill filed her second Charge of Discrimination with the EEOC, alleging that after filing her first Charge of Discrimination with the EEOC, she "became targeted by the Company" and was terminated in retaliation for filing the Charge. (DE 32-2 at 42, 45, 83). She further stated that Schneider told her it was terminating her due to a quality failure that posed a potential safety risk, but this reason was "untrue" and "wrongful allegations . . . contributed to [her] discharge." (DE 32-2 at 83).

### G. Grievances by the Union

The Union filed grievances on Sturgill's behalf challenging each of the six corrective actions issued to her from June 12, 2015, through July 26, 2016. (DE 32-2 at 227-28). The Union eventually dropped all but two of the grievances—the March 21, 2016, written reprimand for wearing improper brazing glasses, and the July 26, 2016, termination. (DE 32-2 at 227-28). On April 10, 2017, after an evidentiary hearing on these two grievances, the arbitrator issued a decision finding that Sturgill was discharged for just cause, in that "[t]here was convincing evidence that [Sturgill] was unable to meet the reasonable standards set by [Schneider] on multiple occasions and that she was justifiably subjected to the corrective action procedure." (DE 32-2 at 228, 236-50).

*H. Sturgill Files This Suit*

The EEOC dismissed Sturgill's second Charge of Discrimination on August 15, 2017, and issued her a Dismissal and Notice of Rights. (DE 32-2 at 46, 201). Less than 90 days later, on November 9, 2017, Sturgill filed the instant lawsuit. (DE 1). For the reasons already articulated *supra*, in footnote 2, the only claim before the Court is Sturgill's claim of retaliation.

## II. STANDARD OF REVIEW

Summary judgment may be granted only if there are no disputed genuine issues of material fact. *Payne*, 337 F.3d at 770. When ruling on a motion for summary judgment, a court "may not make credibility determinations, weigh the evidence, or decide which inferences to draw from the facts; these are jobs for a factfinder." *Id.* (citations omitted). The only task in ruling on a motion for summary judgment is "to decide, based on the evidence of record, whether there is any material dispute of fact that requires a trial." *Kodish v. Oakbrook Terrace Fire Prot. Dist.*, 604 F.3d 490, 507 (7th Cir. 2010) (quoting *Waldridge v. Am. Hoechst Corp.*, 24 F.3d 918, 920 (7th Cir. 1994)). If the evidence is such that a reasonable factfinder could return a verdict in favor of the nonmoving party, summary judgment may not be granted. *Payne*, 337 F.3d at 770.

A court must construe the record in the light most favorable to the nonmoving party and avoid "the temptation to decide which party's version of the facts is more likely true," as "summary judgment cannot be used to resolve swearing contests between litigants." *Id.* (citations omitted). However, "a party opposing summary judgment may not rest on the pleadings, but must affirmatively demonstrate that there is a genuine issue of material fact for trial." *Id.* at 771 (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986)).

### III. DISCUSSION

#### A. *Applicable Law*

To survive summary judgment on a claim of unlawful retaliation under Title VII, a plaintiff "must produce enough evidence for a reasonable jury to conclude that (1) she engaged in statutorily protected activity; (2) the [defendant] took a materially adverse action against her; and (3) there existed a but-for causal connection between the two." *Burton v. Bd. of Regents of Univ. of Wis. Sys.*, 851 F.3d 690, 695 (7th Cir. 2017) (citations omitted); *see also Tomas v. Ill. Dep't of Emp't Sec.*, — F. App'x —, 2019 WL 2068472, at *2 (7th Cir. May 10, 2019) (citation omitted). The court must "consider the evidence as a whole and conduct a straightforward inquiry: Does the record contain sufficient evidence to permit a reasonable fact finder to conclude that retaliatory motive caused the [materially adverse action]?" *Abrego v. Wilkie*, 907 F.3d 1004, 1014 (7th Cir. 2018) (alteration in original) (citation and internal quotation marks omitted).

#### B. *Statutorily Protected Activity*

Sturgill engaged in statutorily protected activity on four occasions: (1) on February 26, 2016, when she complained to Troxell of gender discrimination in the vent cell department; (2) on March 31, 2016, when she complained to Harden that Robertson was retaliating against her by verbally threatening her at the March 10, 2016, meeting and by disciplining her on March 21, 2016, for wearing improper brazing glasses; (3) on April 28, 2016, when she filed her first Charge of Discrimination with the EEOC; and (4) on January 27, 2017, when she filed her second Charge of Discrimination with the EEOC. As such, the parties do not dispute that Sturgill satisfies the first element of her retaliation claim. *See Poullard v. McDonald*, 829 F.3d

844, 856 (7th Cir. 2016) (stating that the plaintiff's filing of a complaint of discrimination with the EEOC was "protected activity"); *Malin v. Hospira, Inc.*, 762 F.3d 552, 558 (7th Cir. 2014) (stating that the plaintiff's complaint to human resources about sexual harassment was "protected activity").

## C. Materially Adverse Action

"In the retaliation context, determining whether an action is materially adverse means inquiring whether it well might have dissuaded a reasonable worker from making or supporting a charge of discrimination." *Boss v. Castro*, 816 F.3d 910, 918 (7th Cir. 2016) (citing *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68 (2006)); *see also Poullard*, 829 F.3d at 856; *Green v. In-Sink-Erator*, No. 07-CV-461, 2009 WL 2059082, at *8 (E.D. Wis. July 15, 2009) ("[I]n the context of a retaliation claim the term 'adverse employment action' has a more expansive meaning that in the context of a substantive discrimination claim." (citing *Burlington N. & Santa Fe Ry. Co.*, 548 U.S. at 64-65)). "Because Title VII does not set forth a general civility code for the American workplace, its anti-retaliation provision does not protect against petty slights, minor annoyances, and bad manners." *Boss*, 816 F.3d at 918 (citation omitted). "An employee must suffer something more disruptive than a mere inconvenience or an alteration of job responsibilities." *Id.* (citation and internal quotation marks omitted). Title VII's anti-retaliation provision "protects an individual not from all retaliation, but from retaliation that produces an injury or harm." *Lewis v. Wilkie*, 909 F.3d 858, 868 (7th Cir. 2018) (quoting *Burlington N. & Santa Fe Ry. Co.*, 548 U.S. at 67).

As to Robertson's alleged threats toward Sturgill during the March 9 and 10, 2016, meetings, they do not rise to the level of a materially adverse action, as "these [alleged] threats . .

13

. had no effect on [Sturgill's] compensation or career prospects." *Poullard*, 829 F.3d at 856; *see Dunn v. Washington Cty. Hosp.*, 429 F.3d 689, 692 (7th Cir. 2005) ("Talk is cheap; unless Dunn knew that Coy had sabotaged the career of other nurses, his statements would not have dissuaded reasonable persons from protecting their own rights under the statute and thus cannot violate Title VII." (citation omitted)). "Verbal comments that are not materially adverse do not support a retaliation claim." *Reliford v. Advance/Newhouse P'ship*, 716 F. App'x 551, 553-54 (7th Cir. 2018) (citation omitted).

Likewise, a written reprimand typically does not rise to the level of a materially adverse action. *See Lloyd v. Swifty Trans., Inc.*, 552 F.3d 594, 602 (7th Cir. 2009) (finding that two written reprimands without any changes in the terms or conditions of the plaintiff's employment were not adverse employment actions); *see Threatt v. Donovan*, 380 F. App'x 544, 548 (7th Cir. 2010) (finding that the defendant's belittling of the plaintiff in front of coworkers, excessive scrutiny of her work, and subjecting her to lengthy disciplinary meetings did not constitute a materially adverse action); *Lauth v. Covance, Inc.*, 155 F.3d 855, 879 n.12 (S.D. Ind. 2016) (stating that giving an employee a low performance rating or placing her on a performance improvement plan is not a materially adverse action).

Having said that, but for the written reprimand that Sturgill received on March 21, 2016, for wearing improper brazing glasses, Sturgill's six-month period without corrective action would have expired on May 16, 2016, and the three prior corrective actions issued in 2015 would have been removed from her record.[5] This would have put Sturgill at the third step of the five-

---

[5] Schneider argues that Sturgill cannot rely on the two corrective actions for wearing improper brazing glasses and mislabeling transformers because "they are both beyond the scope" of the Charge of Discrimination she filed with the EEOC on January 27, 2017, in which she claimed that she was "wrongfully discharged" for retaliatory reasons. (DE 37 at 4). But Schneider reads this Charge too narrowly. Sturgill also claimed in the Charge that after

step disciplinary process, rather than the final step that resulted in her termination, when she allegedly improperly welded tie bars on the same side of a transformer on June 30, 2016. *See Burlington N. & Santa Fe Ry. Co.*, 548 U.S. at 69 ("[T]he significance of any given act of retaliation will often depend upon the particular circumstances."); *Koty v. DuPage Cty., Ill.*, 900 F.3d 515, 521 (7th Cir. 2018) (indicating that a court should consider the defendant's alleged retaliatory actions "alone or cumulatively"); *Huri v. Office of the Chief Judge of the Circuit Court of Cook Cty.*, 804 F.3d 826, 833 (7th Cir. 2015) (stating that false disciplinary reports, screaming, exclusion from social functions, and denial of time off could constitute a materially adverse action in the retaliation context); *Wagner v. Campbell*, 779 F.3d 761, 767 (8th Cir. 2015) ("Lesser actions than demotion, suspension, and termination can be adverse employment actions if their cumulative effect causes an employee to suffer serious employment consequences that adversely affect or undermine h[er] position." (alteration in original) (citation and quotation marks omitted)); *Tomanovich v. City of Indianapolis*, 457 F.3d 656, 664 (7th Cir. 2006) (stating that it was "questionable" whether updating the plaintiff's notice of unacceptable performance constituted a materially adverse action).

There is no dispute, however, that Sturgill's termination on July 26, 2016, constitutes a materially adverse action. *See Alexander v. Casino Queen, Inc.*, 739 F.3d 972, 980 (7th Cir. 2014) (stating that termination constitutes an adverse employment action); *Threatt*, 380 F. App'x at 548 (being fired "undoubtedly qualifies as an adverse employment action"); *Lauth*, 155 F.3d at 879 n.12 (same). Therefore, Sturgill has no difficulty establishing the second element of her

---

filing her first EEOC Charge of Discrimination in March 2016, she "became targeted by the Company" and that "wrongful allegations . . . contributed to [her] discharge." (DE 32-2 at 83).

retaliation claim.[6]

### D. But-For Causation

"In the Title VII retaliation context, causation can be established by circumstantial evidence, which includes, for example, suspicious timing, a pretextual explanation for the termination, and evidence that similarly situated employees were treated differently."[7] *Abrego*, 907 F.3d at 1015 (citation and internal quotation marks omitted).  "This list is not exclusive; the plaintiff can point to any other evidence from which an inference of discriminatory intent might be drawn." *Id*. (citation and internal quotation marks omitted).

#### 1. Suspicious Timing

Sturgill's primary argument to establish causation is that "[t]he entire course or retaliation occurred in temporal proximity to [her] protected actions."  (DE 36 at 8).  She emphasizes that: (1) the corrective action on March 21, 2016, for wearing improper brazing glasses occurred just three weeks after her internal complaint of gender discrimination to Troxell; and (2) her final two corrective actions on June 29 and 30, 2016, occurred just two months after she filed her first Charge of Discrimination with the EEOC.

However, "temporal proximity between an employee's protected activity and an adverse employment action is rarely sufficient to show that the former caused the latter." *Abrego*, 907

---

[6] Even if the written reprimand for wearing improper brazing glasses falls short of constituting a materially adverse action, "actions that were not in and of themselves materially adverse . . . may still be evidence of retaliatory motive for actionable actions." *Burton*, 851 F.3d at 697 (citing *Poullard*, 829 F.3d at 857).  Therefore, the written reprimand issued on March 21, 2016, as well as Robertson's alleged threats on March 9 and 10, 2016, are relevant to Sturgill's argument of pretext.

[7] Sturgill does not attempt to show causation by identifying a similarly-situated individual who was treated differently.  (*See* DE 36); *see, e.g.*, *Lauth*, 155 F. Supp. 3d at 880 n.13 (observing that the plaintiff failed to argue his retaliation claim under the indirect method, but that if he had, it would fail because he had not identified a similarly situated non-complaining employee who was treated more favorably).

F.3d at 1015 (citations omitted); *see Mobley v. Allstate Ins. Co.*, 531 F.3d 539, 549 (7th Cir. 2008) ("Evidence of temporal proximity, . . . standing on its own, is insufficient to establish a causal connection for a claim of retaliation." (citations omitted)).  "The reason is obvious: [s]uspicious timing may be just that—suspicious—and a suspicion is not enough to get past a motion for summary judgment."  *Kidwell v. Eisenhauer*, 679 F.3d 957, 966 (7th Cir. 2012) (alteration in original) (citation and internal quotation marks omitted).  Therefore, "a short gap may permit a plaintiff to survive summary judgment only if there is also other evidence that supports the inference of a causal link."  *Abrego*, 907 F.3d at 1015 (citations and internal quotation marks omitted); *see Jacobs v. Winky Food Prods., LLC*, 45 F. Supp. 3d 869, 875 (E.D. Wis. 2014) ("Temporal proximity 'can serve as an important evidentiary ally of the plaintiff,' but it 'rarely alone is sufficient to create a triable issue on causation . . . .'" (quoting *Magnus v. St. Mark United Methodist Church*, 688 F.3d 331, 336-37 (7th Cir. 2012))).

"There may be an exception to this general rule when the adverse action occurs 'on the heels of protected activity,' [but] such a circumstance would be limited to matters occurring within days, or at most, weeks of each other."  *Mobley*, 531 F.3d at 549 (citations omitted); *Kidwell*, 679 F.3d at 966 ("For an inference of causation to be drawn solely on the basis of a suspicious-timing argument, we typically allow no more than a few days to elapse between the protected activity and the adverse action." (collecting cases)); *see, e.g., Magyar v. St. Joseph Reg'l Med. Ctr.*, 544 F.3d 766, 772 (7th Cir. 2008) (finding a nine-day interval sufficient to infer retaliation); *McClendon v. Ind. Sugars, Inc.*, 108 F.3d 789, 797 (8th Cir. 1997) (finding a three-day interval sufficient).  The temporal proximity, however, must be "very close."  *Clark Cty. Sch. Dist. v. Breeden*, 532 U.S. 268, 273 (2001) (citations omitted); *see Leitgen v. Franciscan*

*Skemp Healthcare, Inc.*, 630 F.3d 668, 675 (7th Cir. 2011) ("[S]uspicious timing alone is almost always insufficient to survive summary judgment." (citations omitted)).

Here, the only time interval that could *possibly* be viewed as "very close" is Schneider's issuance of the written reprimand to Sturgill on March 21, 2016, for wearing improper brazing glasses, which occurred three weeks after Sturgill's February 26, 2016, complaint of gender discrimination to Troxell. *See Lang v. Ill. Dep't of Children & Family Servs.*, 361 F.3d 416, 419 (7th Cir. 2004) (concluding that the plaintiff's receipt of unjustified disciplinary actions in the "same month" he engaged in protected activity sufficient to raise an inference of retaliation); *but see Arnold v. Visiontek Prods., LLC*, 748 F. App'x 59, 62 (7th Cir. 2019) (finding a one-month interval insufficient); *Povey v. City of Jeffersonville, Ind.*, 697 F.3d 619, 624 (7th Cir. 2012) (finding a three-week interval insufficient).

Nevertheless, the subsequent two corrective actions that set Sturgill's termination in motion did not occur until three months after her internal complaint and two months after she filed her first Charge of Discrimination with the EEOC. A two-month time interval is too remote in time to raise an inference of retaliation. *See Jones v. A.W. Holdings LLC*, 484 F. App'x 44, 49 (7th Cir. 2012) (concluding that a two-month interval is insufficient to raise an inference of retaliation); *Turner v. The Saloon, Ltd.*, 595 F.3d 679, 690 (7th Cir. 2010) (same)*; O'Leary v. Accretive Health, Inc.*, 657 F.3d 625, 629, 635 (7th Cir. 2011) (same); *Argyropoulos v. City of Alton*, 539 F.3d 724, 734 (7th Cir. 2008) (finding a seven-week interval insufficient). Therefore, Sturgill cannot rest solely on the evidence of suspicious timing to raise an inference of retaliation and must point to other evidence to establish a causal connection, such as pretext.

*E. Pretext*

Recognizing that evidence of temporal proximity, standing alone, is insufficient to establish a causal connection, Sturgill also argues that Schneider's explanation for taking the materially adverse action against her was pretextual. More particularly, Sturgill claims that Schneider's reasons for disciplining her that resulted in her termination are "unworthy of credence."[8] (DE 36 at 8 (citation omitted)).

"To establish pretext, [a plaintiff] must identify such weaknesses, implausibilities, inconsistencies, or contradictions in [the defendant's] proffered reasons that a reasonable person could find them unworthy of credence and hence infer that [the defendant] did not act for the asserted non-discriminatory reasons." *Boumehdi v. Plastag Holdings, LLC*, 489 F.3d 781, 792 (7th Cir. 2007) (citing *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 143 (2000)); *see also Liu v. Cook Cty.*, 817 F.3d 307, 316 (7th Cir. 2016). "Merely disagreeing with an employer's reasons does not meet this standard." *Tibbs v. Admin. Office of the Ill. Courts*, 860 F.3d 502, 506 (7th Cir. 2017). Rather, "[a] plaintiff must point to evidence tending to prove that the employer's proffered reasons are factually baseless, were not the actual motivation for the discharge in question, or were insufficient to motivate the termination." *Id*. (citation omitted). "If [the defendant] honestly believed the reasons it gave, . . . [the plaintiff] loses even if the reasons were foolish, trivial, or baseless." *Boumehdi*, 489 F.3d at 792 (citation omitted); *see also Tibbs*, 860 F.3d at 506 ("Pretext involves more than just faulty reasoning or mistaken judgment

---

[8] Notably, at Sturgill's deposition, Schneider's attorney asked Sturgill what evidence she had that her termination was in retaliation for her complaint, and Sturgill responded: "Because I filed a complaint . . . ." (DE 32-2 at 46). Schneider's counsel then asked: "Right. So other than the fact of your filing the complaint, . . . do you have any other evidence to suggest that your termination was in retaliation for your having filed the complaint?" Sturgill responded: "No." (DE 32-2 at 46).

on the part of the employer; it is [a] lie, specifically a phony reason for some action." (alteration in original) (citation and internal quotation marks omitted)); *Liu*, 817 F.3d at 316 (same).

While Sturgill disputes the reasons that Schneider gave for issuing her the three corrective actions in 2016, she does not provide any evidence upon which to infer that Schneider did not honestly believe those reasons. *See Matthews v. Waukesha Cty.*, 759 F.3d 821, 824 (7th Cir. 2014) (stating that a non-moving party is not entitled to the benefit of "inferences that are supported only by speculation or conjecture"); *cf. Lang*, 361 F.3d at 419-20 (denying summary judgment where plaintiff submitted evidence proving that several disciplinary actions were "baseless," "unjustified" and "unfounded"). With respect to the corrective action for wearing improper brazing glasses, Sturgill does not dispute that she was wearing improper brazing glasses. (*See* DE 32-2 at 26-27). Instead, she attempts to establish pretext by relying on her deposition testimony that she had been using the same brazing glasses for two years and that "the safety guy" for the company had told her two years earlier that she could wear the glasses for brazing. (DE 32-2 at 26).

Sturgill does not suggest, however, that Gerhart was lying on March 21, 2016, when he issued her a written reprimand because her glasses were improper for brazing. That Sturgill used improper brazing glasses for two years without being disciplined does not render Schneider's written reprimand on March 21, 2016, factually baseless. *See Tibbs*, 860 F.3d at 506; *Stewart v. Henderson*, 207 F.3d 374, 377 (7th Cir. 2000) ("Our only concern is whether the legitimate reason provided by the employer is in fact the true one."). Nor does Sturgill identify another non-complaining similarly-situated employee who wore improper brazing glasses and was not

disciplined.[9]  As such, Sturgill fails to show that Schneider's written reprimand for wearing

improper brazing glasses was a pretext for retaliation.

Sturgill also disputes the suspension she received on June 29, 2016, for switching labels

on two transformers.  Again the only evidence she points to is her own deposition testimony, in

which she suggests that the mislabeling *may* have been the fault of another employee, "Lyle."

(DE 32-2 at 27-29).  But even if Schneider mistakenly attributed the labeling error to Sturgill,

this evidence does not show that Gerhart and Troxell manufactured a phony reason for the

suspension.  "Being blamed unfairly is not evidence of deceit."  *Widmar v. Sun Chem. Corp.*,

772 F.3d 457, 466 (7th Cir. 2014); *see Sklyarsky v. ABM Janitorial Servs.-N. Cent., Inc.*, 494 F.

App'x 619, 623 (7th Cir. 2012) ("To show pretext, Sklyarsky must present evidence that ABM's

reasons for the discipline were not *honest*, not merely that they were mistaken." (citations

omitted)); *Argyropoulos*, 539 F.3d at 734 (rejecting the plaintiff's assertion that she was wrongly

blamed for the mistakes of others where she offered no evidence to substantiate that assertion);

*Gates v. Caterpillar, Inc.*, 513 F.3d 680, 691 (7th Cir. 2008) ("[I]t is not the court's concern that

an employer may be wrong about its employee's performance, or be too hard on its employee.

Rather, the only question is whether the employee's proffered reason was pretextual, meaning

that it was a lie." (citations omitted)).

Likewise, Sturgill attempts to dispute the reason that Schneider gave for the final

---

[9] In fact, Sturgill apparently was not the only employee disciplined for wearing improper brazing glasses, as the Arbitration Opinion and Award refers to another employee who also wore improper brazing glasses and was issued a corrective action, though that employee's corrective action was later reduced to a documented discussion through the Union's settlement process.  (DE 32-2 at 236-50).  Sturgill does not identify this employee in her response brief or show that this employee was similarly situated to Sturgill.  (*See* DE 36).  "[I]t is not the Court's job to make Plaintiff's argument, to actually assemble the 'mosaic,' to figure out who Plaintiff claims as comparators, why Defendant's reasons for terminating Plaintiff are a lie, and so forth."  *Marron v. Eby-Brown Co., LLC*, No. 11-cv-2584, 2013 WL 870577, at *6 (N.D. Ill. Mar. 7, 2013); *Kolpien v. Family Dollar Stores of Wis., Inc.*, 402 F. Supp. 2d 971, 987 (W.D. Wis. 2005) ("[I]t is not the job of this court to make a party's arguments for it.").

corrective action resulting in her termination—that she improperly welded tie bars on the same side of a transformer. When confronted at her deposition with pictures of the alleged transformer, which included a sticker with her particular "clock number" on it, Sturgill simply responded that "you can get those stickers anywhere" and that "[a]nyone could have put a sticker on that coil with this." (DE 32-2 at 30). A non-moving party is not entitled to the benefit of "inferences that are supported only by speculation or conjecture." *Matthews*, 759 F.3d at 824; *see Argyropoulos*, 539 F.3d 734-35 (speculation or conjecture is insufficient to support a causal connection for retaliation (citation omitted)); *Lalvani v. Cook Cty., Ill.*, 269 F.3d 785, 791 (7th Cir. 2001) (same). That is, "[s]ummary judgment is not a dress rehearsal or practice run; it is the put up or shut up moment in a lawsuit, when a party must show what evidence it has that would convince a trier of fact to accept [her] version of events." *Hammel v. Eau Galle Cheese Factory*, 407 F.3d 852, 859 (7th Cir. 2005) (citation and internal quotation marks omitted); *see Argyropoulos*, 539 F.3d at 732 ("[T]he nonmoving party must do more than raise some metaphysical doubt as to the material facts; [she] must come forward with specific facts showing that there is a genuine issue for trial." (second alteration in original) (citation and internal quotation marks omitted)). As such, Sturgill's mere speculation that Schneider manufactured evidence for the June 30, 2016, corrective action is insufficient to establish pretext.

Moreover, this is not a case where an employee with a clean disciplinary history starts receiving disciplinary reprimands only after complaining about discrimination. *See, e.g.*, *Terry v. Gary Cmty. Sch. Corp.*, 910 F.3d 1000, 1007 (7th Cir. 2018); *Garza v. Wautoma Area Sch. Dist.*, 984 F. Supp. 2d 932, 946 (E.D. Wis. 2013) ("An employer's sudden criticism of an employee's performance may raise an inference of retaliation." (citing *Lang*, 361 F.3d at 419)). Rather, Sturgill had a significant disciplinary history during her employment at Schneider, accumulating 36 documented discussions during her employment and three corrective actions

during 2015. The three corrective actions in 2015 occurred fairly close in time with each other (a five-month period), as did the corrective actions in 2016, but *before* Sturgill ever complained about discrimination. (DE 32-2 at 16, 148-61, 224, 253). Considering this disciplinary history, the fact that Sturgill received three corrective actions in 2016 within a three-month period is not so unusual. Accordingly, Sturgill's disciplinary history prior to her complaints undercuts her theory that she was terminated in retaliation for making complaints.[10] *See, e.g.*, *Torres v. Ill. Dep't of Emp't Sec.*, No. 12 C 01318, 2015 WL 5162709, at *10 (N.D. Ill. Sept. 2, 2015) (finding that the plaintiff's disciplinary history preceding her claim of discrimination undercut her theory that she was disciplined in retaliation for complaining about discrimination).

In sum, Sturgill's heavy reliance on suspicious timing to establish the causation element of her retaliation claim fails to defeat Schneider's evidence in support of it motion for summary judgment. On this record, even when viewing the facts in the light most favorable to Sturgill and affording her every reasonable inference, no reasonable jury could conclude that Sturgill would not have been terminated "but for" her complaints of discrimination and retaliation. *Burton*, 851 F.3d at 695. Consequently, Schneider's motion for summary judgment will be GRANTED.

## IV. CONCLUSION

For the foregoing reasons, Schneider's motion for summary judgment (DE 31) is GRANTED. The Clerk is DIRECTED to enter a judgment in favor of Defendant Schneider

---

[10] Furthermore, the Union filed grievances on Sturgill's behalf challenging each of the six corrective actions that Sturgill received in 2015 and 2016. (DE 32-2 at 224, 227-28). However, the Union ultimately elected not to arbitrate four of those grievances. (DE 32-2 at 224, 227-28). In the two that the Union did arbitrate—the written reprimand for wearing improper brazing glasses on March 21, 2016, and the improper welding of the tie bars on June 30, 2016—the arbitrator issued a decision denying both grievances and finding that Sturgill was discharged for just cause. (DE 32-2 at 228, 236-50).

Electric and against Plaintiff Lisa C. Sturgill.

SO ORDERED.

Entered this 7th day of June 2019.

/s/ Susan Collins
Susan Collins
United States Magistrate Judge
